# Case No. 11,248.

## POLK v. COSGROVE.

### [4 Biss. 437.] [1]

Circuit Court, N. D. Illinois. Jan., 1865.

RECORD OF DEED—WHAT CONSTITUTES—NOTICE.

1. The filing a deed for record with the recorder of the proper county is, in Illinois, all that is required of the grantee, and his rights are not affected though the recorder fails to record it, or enter it in his minute book.

[Cited in Sinclair v. Slawson, 44 Mich. 125, 6 N. W. 208.]

2. Notice to the plaintiff's attorney in attachment proceedings of an unrecorded deed of the land attached operates as notice to the plaintiff.

3. But a clause in a deed from a stranger to the title is not notice to purchasers.

Ejectment for the one-third interest in the S. E. ¼ and N. W. ¼, section 12, township 39 N., range 13 E., in Cook county, Illinois.

It was stipulated that Joseph M. Faulkner had title on the 20th of June, 1836, and the plaintiff [Edward L. Polk] claimed under a deed in attachment proceedings instituted by James Marsh against Faulkner, February 15, 1838. Judgment recovered May 23, and deed in due form by the sheriff to Marsh November 1, 1840. Marsh afterwards conveyed to plaintiff.

The defendant [Alfred Cosgrove] claimed that on the 13th of September, 1836, Faulkner made a deed to one Birdsall, and that this deed was duly filed for record. Defendant had a conveyance from Birdsall.

[1] [Reported by Josiah H. Bissell. Esq., and here reprinted by permission.]

DRUMMOND, District Judge (charging jury). If Faulkner made a valid deed of the property to Mr. Birdsall on the 13th of September, 1836, and that deed was filed for record in the recorder's office of this county where the land lies, and prior to the issuing of that attachment, as a matter of course, the plaintiff cannot recover.

By the law in force at that time, every deed took effect from the time it was filed for record as against third parties purchasing from the grantor in good faith and without notice of such deed. Of course, as between the parties, a deed is always good, whether recorded or not.

The law at that time also rendered it the duty of the recorder, when a deed was filed for record to make a memorandum of it in a book which he was required to keep, mentioning the date, the parties, and the place where the lands were situated. He was also required to make an alphabetical index to each record book, showing the page on which each instrument is recorded, with the names of the parties thereto, and he was required to give a receipt to the person bringing such deed or writing to be recorded, bearing date on the same day as the entry and containing the abstract aforesaid.

The testimony would seem to leave no reasonable doubt of the filing of the deed were it not for the absence of the deed upon the record, and also of any memorandum of it in the entry-book which the recorder was required to keep, while there is an entry on the entry-book and a record of the deed from Birdsall to Pell, which Mr. Pell says he forwarded at the same time and by the same agent. There is something very singular about this, which, it is insisted on the part of the plaintiff, throws doubt upon the fact whether the deed was ever actually filed for record.

Of course it was not enough that the deed was left in the recorder's office or left with the recorder. It must have been filed for record—given and received for that purpose. But I feel bound to say, as a matter of law, that if, from all the evidence, you believe that the deed was thus filed, that was all that was required of the party; that if it was not recorded, or even if it was not entered on the entry-book, I think that third parties ought not to be prejudiced by the neglect of the recorder. That I understand to be the law of this state. It may be a difficult and embarrassing question, because the very object of the law was that there should be spread upon the record authentic evidence of the transmission of title, and if a deed is actually left in the recorder's office, filed and received for entry, and no entry of it is made in the entry-book, none can tell that there is any transfer of title to the land; but still that is something which the law throws upon the recorder.

But it is contended on the part of the defendant that, admitting the deed never was

actually filed for record, still there was enough upon the records to inform every one that there was in existence a deed transferring the property from Faulkner to Birdsall, and to establish that, reliance is placed, first, upon the deed from Birdsall to Pell of November 22, 1836, recorded in 1837. This deed recites that Faulkner had conveyed the property to Birdsall on the 13th of September, 1836.

As a matter of law I think that recital does not bind any one claiming from Faulkner or any of his creditors. It does not bind Marsh the plaintiff in the attachment suit, though the deed was actually recorded before the attachment was issued. He had no clue by which he could follow the title. He therefore was not bound to look into a conveyance made from Birdsall. Birdsall was a stranger to the title, so far as he could see. There was nothing upon the records to show that Birdsall had any title. All that he was bound to do was to trace the title from Faulkner on the public records of the county, and there being no title thus traced in the recorder's office from Faulkner, he was not bound to look into any possible deed which might be upon the records of the county in order to determine whether there was not a recital therein that Faulkner had divested himself of title. This would be unreasonable.

But it is insisted further on the part of the defendant that there was a mortgage from Birdsall to Faulkner foreclosed, and an assignment November 23, 1836, of the mortgage by Faulkner to Grant & Bertel. The mortgage was dated September 13, 1836, the same date as the deed claimed to have been made by Faulkner to Birdsall. The bill was filed November 8, 1837, interlocutory decree made March 10, 1838, and final decree of foreclosure (what is called strict foreclosure) in August, 1838. It will be seen that the bill was filed before the attachment was issued, although the decree was not made until after.

It is argued on the part of the defendant that as this bill showed that Faulkner had made a conveyance to Birdsall and had assigned it to the plaintiff in the bill of foreclosure, and that these facts were known to the attorneys who instituted the proceedings in attachment, that notice to them of this deed was notice to Marsh. It is to be observed that the suit was pending at the time that the attachment was issued; so that they had the care of this suit at the time the attachment was issued. It was not actually disposed of, but was in progress. The question is, whether notice to the attorneys was notice to Marsh, so as to destroy the attachment issued and levied upon this property. This is a very nice question, and one by no means free from difficulty. I can only give you my impression at this time. It is true that an attachment can issue against a non-resident, which, it is conceded, was the fact here, by filing an affidavit and complying with the various requirements of law, without specifically setting forth the particular property which it is claimed that the court should attach, and therefore it may be true in a given case that the attorney may not actually know upon what particular property the process will be served when he obtains it for his client, but still the object of the attorney and of the client is the seizure of the property, either by attachment or by what is called a garnishee process, which is a branch of the attachment, and it is presumable that the client of the attorney has in view some property upon which the process is to be served, either when the writ issues or before it is served. It is said the sheriff executes the process. Of course he does, but the presumption is that he executes it under instruction from the client or the attorney, and I am inclined to think that where the attorney knows that property has been transferred before the attachment is served, that knowledge must be considered as being brought home to his client, so that if the attorneys in the foreclosure suit and in the attachment suit knew, as attorneys, that Faulkner had made a conveyance of this property in September, 1836, to Birdsall, when this attachment was issued and served, we must also suppose for the purpose of this case that Marsh knew it. They had not closed the litigation in which they were engaged for Grant & Bertel. It was still pending and undetermined, and while they were attorneys of these parties as to this very property an attachment was taken out by a third party and levied upon it. It is a little different from a case where the litigation had ended, and they had been employed in a new case where it may be supposed that the facts would have passed out of their mind.

The case was before them, not yet determined. But, notwithstanding Mr. Marsh might not have been a bona fide purchaser for value, still, anyone can protect himself, by either his own good faith, his want of notice and payment of value, or by claiming through any other person who has acquired the property in good faith, etc. The deed and mortgage not being notice to Marsh, no subsequent purchaser would be affected by the deed any more than Marsh, and no subsequent purchaser would be affected by notice to Marsh if he purchased in good faith, for value and without knowledge. Where it is claimed that a person is a subsequent purchaser, without notice and for value, the rule is that the party relying upon this fact must establish it, and by some proof independent of the mere deed.

Verdict for defendant.

NOTE. Omission by the register to index a conveyance does not prevent the conveyance being valid against subsequent purchasers. The index is no part of the record. Bishop v. Schneider, 46 Mo. 475. But the noting of a deed for record by the officer, which is withdrawn by the person taking the beneficial interest under it, before being spread upon the

record, gives it no priority. Hickman v. Perrin, 6 Cold. 135. Consult Riggs v. Boylan [Case No. 11,822]. That notice to an agent or solicitor of a person is notice to himself, see Mounce v. Byars, 11 Ga. 180. As to the recitals in conveyances being notice to the public, see next case.