James C. Smith, J. [After stating the above facts.]
—The claim of the defendant, just above stated, presents the principal question, if not the only one, in the case. It is a very important question, not .only to the parties, but to ail persons who may have occasion to record conveyances in the clerk’s office, or to search for conveyances recorded by others. It is not a little surprising to find that a question so likely to come up frequently has not arisen in any reported case in this State. I suppose the usual practice in searching the records in the clerk’s office, is to consult the index, and to rely upon it. That is obvivously the most convenient way; and if the index is full and accurate, it saves the necessity of going through the records themselves. But if the index is imperfect, and misleads the searcher, as appears to have been the case here, who is to suffer—the party who duly transcribed his mortgage in the record buok, or the party who, relying on the index, omitted to look at the record ? The question is to be answered by determining whether the index is an essential part of the record—that is to say, whether it is necessary to the completeness and efficiency of the record as a notice to after purchasers.
Whatever is essential to the validity of the record as a notice, is made so by positive law, and a solution of the question is to be found in an examination of the *385 statutes bearing upon it. The recording act novr in force in this State is a part of the revised statutes as originally adopted (1 R. S. 755, part 2, ch. 3). It is contained in a chapter entitled, “Of the proof and recording of conveyances of real estate, and the cancelling of mortgages.” Its provisions have the effect to make every conveyance of real estate, which is not recorded as therein prescribed, void as against any subsequent purchaser, in good faith, and for a valuable consideration, whose conveyance shall be first duly recorded (§ 1). The provisions respecting the manner of recording are, in substance, as follows : The clerk is to provide one set of books for deeds, and another for mortgages (§ 2). To entitle any conveyance to be recorded, it shall be acknowledged as prescribed in the-act (§ 4 et seq.).
Section 24 provides that “every conveyance entitled; by law to be recorded, shall be recorded in the order, and as of the time, when the same shall be delivered to-the clerk for that purpose, and shall be considered as recorded, from the time of such delivery.” Section 25, directs that “the recording officer shall make an entry-in the record immediately after the copy of every conveyance recorded, specifying the time of the day,, month and year, when the said conveyance was recorded, and shall indorse upon every conveyance-recorded by him, a certificate, stating the time as aforesaid, when, and the book and page where, the, same was recorded. ’ ’ The term ' ‘ conveyance, ” as used in the chapter, includes a mortgage (§ 38).
The general policy of these provisions prevailed: from an early day, anterior to the American revolution,, and was continued by successive enactments under the colonial and State governments of New York, down to-the time of the adoption of the revised statutes (Van Schaack's ed. of Laws of N. Y., 324 ; Const, off 1777,. § 35; Laws of 1788, c. 45, Jones & Varices ed. vol:. *386 2, p. 266 ; R. L. of 1801 [1 Kent & Radcliffe ed.], p. 480; 1 R. L. [1813], p. 372).
The policy of this legislation is to be found at a still earlier day in the English statute of 7th Anne, c. 20, which provided a local registry for the county of Middlesex. The object of that statute was very explicitly stated in the preamble, thus: “Whereas by the different and secret way of conveying lands,” &c., “ such as are ill-disposed have it in their power to commit frauds, and frequently do so by means whereof several persons . . . have been undone in their purchases and mortgages, by prior and secret conveyances and fraudulent incumbrances, ” &c. The provision which that early statute made to prevent the frauds against which it was aimed, was to require a “memorial” of every conveyance to be registered in the manner directed by the act. The New York statute of 1788 also provided for a registry. The register was to show the names of the mortgagors and mortgagees, the dates of the respective mortgages, the mortgage money, the time or times ■when payable, the description and boundaries of the Hands mortgaged, and the time when such mortgages were ■registered or recorded; to which register, all persons ■ whomsoever, at proper seasons, were to have recourse and • search, and the clerk was allowed a fee for every entry i in the register, and a fee for every search {Laws of 1788, c. 45, § 1). The act of 1801 was substantially the same as that of 1788. So, also, was the act of 1813, except that it required the clerk, when registering a mortgage, also to record at length the special power of sale, if any was contained therein. So far the legislation on the subject provided that mortgages should be registered, although, for a portion of the same time, at least, deeds were required to be recorded at length.
In 1822 an act was passed providing for the recording of mortgages at full length, in the order, and as of the time when the same should be delivered to any *387 clerk for that purpose (Laws of 1822, c. 245). It provided that every mortgage should be considered as recorded from the time it should be so delivered (§ 1), and that the mortgage first recorded as aforesaid should have preference according to the time of recording (§ 2). In 1823, the legislature provided that “ every deed, conveyance or other writing” affecting the title to real estate, except contracts for lands or leases for a term less than three years, should be recorded (Laws of 1823, c. 263, §§ 1, 2, 5).
The last two acts seem to have remained in force until the revised statutes took effect, and to have been substantially incorporated in them. It is to be observed that none of the acts above cited, whether providing for a record in full or a registry, required an index.
■The earliest statute in this State, which I have seen, authorizing or requiring clerks to make indices of records, was passed in 1826. It required them to make general indices in separate books, of all deeds and mortgages recorded or registered in their respective offices, whenever directed by the court of common pleas, and it provided that when the indices should be completed, the clerks should be paid by the boards of supervisors {Laws of 1826, c. 313, p. 359). It seems from the language of the proviso at the end of the act, that in some counties such indices had been theretofore in use, but they were probably gotten up by the clerks in those counties, at their own expense, for their convenience, as there does not appear to have been any legislation authorizing them before that time. In the next year the act of 1826 was amended by providing further compensation to the clerks for making the general indices (Laws of 1827, c. 204, § 3). The act of 1826, as amended in 1827, is yet in force (People v. Supervisors of Dutchess, 24 Wend. 181, per Beohsoh, J., p. 183; Laws of 1843, c. 199, p. 253), except so far as it was superseded by the act of 1843, above cited. *388 It was not repealed or superseded by the revised statutes, nor incorporated into them. The only provision in the revised statutes on the subject of an index, is a single section contained in the article entitled “ Of the powers and duties of certain judicial officers” (2 R. S., 286, § 61). It has no reference to the general indices provided for by the act of 1826 and the act of 1843, but makes it the duty of each county clerk, and of the register of the city and county of New York, to attach an index to every toóle in his office, in which deeds or mortgages shall be recorded, or collector’s bonds entered.
This review of the course of legislation on the subject shows that there is no ground for claiming that prior to the passage of the act of 1826, above referred to, the legislature intended to make an index an essential part of the record. No evidence whatever of such an intent exists, unless it is to be found in the act of 1826, supplemented by that of 1843, or in the section of the Revised Statutes respecting indices, above pointed out.
If those enactments are looked at carefully, it will be difficult to find in them any indication of a purpose to affect in any particular the rule of the recording acts, then long-established and well-known, as to what should constitute notice. There is not a word of reference to the subject of notice under the recording acts, in either of them. They do not purport to amend, repeal, or alter those acts in any particular. They impose no new duty upon parties undertaking to have their conveyances recorded. They simply require the several clerks to do an act, not before required of them, in order, as the statutes of 1826 and of 1843 express it, “to afford correct and easy reference to the books of record in their offices respectively.” The act of 1826 did not provide for continuing the indices. Its end was accomplished when the indices were completed, *389 and the clerks were paid for them. So, Judge Bronson, speaking for the supreme court, held, in The People ■». Supervisors of Dutchess {supra), that feature of the act shows conclusively that it was not intended to require that thereafter a conveyance must be indexed as well as recorded, to make a valid notice. Reading the act of 1843 in connection with the act of 1826, it is clear that the later statute, like its predecessor, had no reference whatever to the subject of notice, under the recording act. As to section 61 in the Revised Statutes, it may be said, that if it had been intended to affect the recording act, it is singular that instead of being made a part of that act in the revision, it was placed in a chapter relating to an entirely different subject. And in view of the fact that it provides for an index to be attached to each book of records, while the acts of 1826 and 1843 provide for general indices in separate books, the assumption that these enactments were intended to affect the rule of notice, gives rise to the question, whether an entry in both the general and the special index is essential to notice, and if not, then in which of them it must be made. The statutes themselves provide no answer to these questions.
In my opinion, the only conclusion to be drawn from an examination of the legislation on the subject, is that the provisions respecting the making of indices of records, whether general or attached to each volume, are not, and at no period have been, a part of the recording acts in force in this State. „ They are designed, not for the protection of the party recording his conveyance, but for the convenience of those searching the records ; and instead of being a part of the record, they simply show the way to the record.
This conclusion is strengthened by two reported cases in this State, arising under the closely analogous statutes relating to the filing of chattel mortgages. By
*390 ch. 279 of the Laws' of 1833, chattel mortgages (unless there is a delivery of the thing mortgaged, and a com tinned change of possession) are required to be filed in a proper clerk’s office, in order to preserve the lien of the mortgagee as against subsequent purchasers, &c., in good faith (Laws 1833, c. 279, § 1). Section 2 requires the clerks to file the mortgages, to indorse thereon the time of receiving the same, and to deposit the same in their respective offices for the inspection of all persons interested. Other provisions require the clerks to number every such mortgage filed with them, and to enter the same alphabetically in books to be provided for that purpose (Laws of 1833, c. 279, § 5; Laws of 1849, c. 69, p. 105). In Dodge v. Potter (18 Barb. 193), the mortgagee filed his mortgage, but the clerk omitted to number it. The general term of the seventh district held, affirming the decision of the judge who tried the cause at the circuit, that the omission did not impair the rights of the mortgagee. In Dikeman v. Puckhafer (1 Abb. Pr. AT. 8. 32) the mortgagee duly filed his mortgage, but the clerk omitted to index it as required by the act of 1849. The defendants subsequently bought the mortgaged property of the mortgagor, and paid value. Before buying, they carefully examined the index of mortgages, and by reason of the omission to index, did not discover the plaintiff’s mortgage. The court (N. Y. common pleas, general term) held that the lien of the plaintiff’s mortgage was superior to the defendant’s title, notwithstanding the omission of the clerk.
These cases stand upon the ground that the mortgagee, by filing and depositing his mortgage with the clerk, had done all that he could do, and all that the statute required him to do, in order to perfect notice of his claim, and that, as the omission of the clerk to index the mortgage occurred without his fault or knowledge, he was not to be prejudiced by it. In- *391 that view, those decisions tend very materially to support the claim of the plaintiffs in this action.
The defendant’s counsel cites several cases in tins State, but they do not seem to have any material bearing upon the question under discussion, to wit, whether the index is an essential part of the record. In Brown v. Volkenning (N. Y. Weekly Digest, vol. 2, No. 4, p. 86), the only question decided, was whether the owner of premises by an unrecorded title had such possession as was notice of his rights to a subsequent mortgagee. White v. Moore (1 Paige, 551) decides only that a deed absolute on its face, if intended as a mortgage, must be recorded as a mortgage to protect the holder against after purchasers. Brown v. Dean (3 Wend. 208), is to the same effect. Buchan v. Sumner (2 Barb. Ch. 165), holds that a judgment properly entered, but irregularly docketed, through the omission of the clerk, under the initial letter of the judgment debtor’s Christian name, instead of the initial letter of his surname, had not priority to a subsequent judgment properly entered and docketed, for the reason that under the Revised Statutes of this State, by which the case was governed, a judgment is not a lien on lands till the record is filed and docketed, as directed by the statute (2 R. S. 360). Beckman v. Frost (18 Johns. 544), N. Y. Life Ins. Co. 8. White (17 N. Y. 469), and Gillig v. Maas (28 Id. 191, 214), are clearly distinguishable from this, as in each of them the record or registry itself was substantially defective or irregular.
Several cases in other States are cited by counsel for the respective parties, which I have not had an opportunity to examine, except from the very full statements of them contained in the briefs of counsel.
So far as I can perceive from the statements submitted to me, the case of Curtis 8. Lyman (24 Term. 338), is on all fours with this, and is an adjudication in point, in the plaintiff’s favor.
*392 So of the case of Bishop v. Schneider (46 Missouri, 472). There seems to be no material difference between the statutes of Vermont and Missouri respectively, and our own, affecting the question.
As to the Iowa cases cited by the counsel for the defendant, the statute in that State, as I read it, expressly makes the indexing an essential part of the recording.
The case of Speer w. Evans (47 Penn. 141), so far as the reasoning of the court goes, upon the point now under consideration, is in favor of the defendant’s position. I do not perceive any material" difference between the Pennsylvania and the New York statutes. But that case was well decided on the ground of actual notice, and in that view, what was said as to the sufficiency of the record was not material to the result.
On the whole, I am of the opinion that under our statute the index is not an essential part of the record for the purpose of notice ; that in this case the plaintiff’s mortgage was duly recorded so as to be regarded as giving notice to after purchasers, and that the lien of the plaintiffs’ mortgage is superior to that of the Baity mortgage held by the defendant Bake.
In reaching this conclusion, I have not overlooked the practical inconveniences that may result from it in searching records. But the duty of the court is only to declare the law as the legislature has laid it down. Arguments ab inconrenienti may sometimes throw light upon the construction of ambiguous or doubtful words; but where, as here, the language of the law makes it plain, they are out of place. Inconveniences in practice will result, whichever way the question shall be decided. The power to remedy them is in the legislature, and not in the courts. Even as the law now stands, the party injured by the omission of the clerk is not without remedy, for he has his action against the clerk.
*393 The plaintiffs’ rights are not affected by the judgments in the foreclosure actions, to which the plaintiffs were not made parties. The defendants’ mortgages are unforeclosed as to the plaintiffs, and the plaintiffs have a right to foreclose their own mortgage, the same as if the defendants’ judgments had not been recovered, and a sale had not taken place.
The plaintiffs are therefore entitled to a judgment for the foreclosure and sale of the premises under their mortgage, to satisfy the amount due thereon, to wit, $2,000, and interest from March 1, -1875, subject to the rights of defendant Bake, by virtue of the Nichols mortgage. The avails of the sale to be had herein are to be applied first to the payment of the defendant’s judgment upon the Nichols mortgage, including his costs therein. The costs of that action are allowed to the defendant, solely for the reason that the plaintiffs, by their demand for relief in the complaint, have conceded his right to them. The proceeds of the sale are to be further applied as demanded in the complaint. The plaintiffs are allowed the costs of this action.*

 Compare Chatham v. Bradford, 50 Geo. 327 ; Schell v. Stein, 76 Pa. St. 398; Polk v. Cosgrove, 4 Biss. 437; Biggs v. Boylan, Id. 445; Conklin v. Hines, 16 Minn. 457; Kimball v. Connolly, 3 Abb. Ct. App. Dec. 504; Morange v. Mix, 44 N. Y. 315.