THE NEW-YORK LIFE INSURANCE COMPANY *v.* WHITE *et al.*

The entry in the book of mortgages to the commissioners for loaning the United States deposit fund, of a mortgage out of the order due to its date, and upon a page which should have contained a mortgage several years antecedent in execution, is not notice to a subsequent mortgagee in good faith.

APPEAL from the Supreme Court. The action was for the foreclosure of a mortgage, executed by Barent P. Staats and wife, July 25th, 1849, and to have a mortgage of the same premises executed by the defendants to White and Leonard, as commissioners for loaning the United States deposit fund, for the county of Albany, and bearing date August 5, 1845, for $5,000, declared a lien subsequent to the plaintiff's mortgage. Upon the trial, at the Albany circuit, before Mr. Justice HARRIS, without a jury, the following facts were found: On the 5th August, 1845, and for several years afterwards, Staats was one of the loan

commissioners for the county of Albany. He had the custody of their book of minutes, and generally transacted the business of the commissioners. Staats being examined as a witness, stated that, having the money in his hands as one of the commissioners, he filled out and executed the mortgage at the time of its date. He was uncertain whether he consulted the other commissioner in regard to the loan, or whether his colleague knew of it. In the commissioners' book of mortgages, this mortgage is numbered seventy-two, and the interest is indorsed upon it as having been paid up to October, 1853. The next preceding mortgage in the book is numbered seventy-one, and bears date June 8, 1837, and the next succeeding mortgage, number seventy-three, also bears date June 8, 1837. It also appears that the name of Samuel Martin had originally been inscribed in the mortgage, as mortgagor, and that subsequently that name had been erased, and that of Barent P. Staats inserted. From the book of minutes kept by the commissioners, as required by law, it appeared that Samuel Martin had made an application, numbered seventy-two, for a loan, which was rejected. The book of minutes contained no entry of a loan to Staats. By reference to mortgage number ninety-two in the book of mortgages, it appeared that $5,000 had been paid thereon, to Staats, on the 5th day of August, 1845; no entry of this payment appears in the book of minutes. Staats' mortgage, if it had been inserted in the book in the order of dates with the other mortgages, would have been number one hundred and seven. In the index of the names of mortgagors, the name of Jeremiah Smith, whose mortgage was number forty-one, had been erased and the name of Barent P. Staats inserted in its place.

The judge held that Staats never became a borrower of the money, within the spirit and meaning of the act for loaning the moneys of the deposit fund, and that Staats must be regarded as a defaulter, having moneys in his hands belonging to the state; that his mortgage to secure such

The New-York Life Insurance Company *v.* White.

indebtedness was valid, as between the parties, but that to have effect against subsequent incumbrancers in good faith, it must have been acknowledged and recorded according to the provisions of the recording act. He ordered judgment giving priority to the plaintiff's mortgage, which was on appeal affirmed at general term in the third district, and the loan commissioners appealed to this court.

*William Barnes,* for the appellants.

*William Betts,* for the respondent.

DENIO, J. In the view we have taken of this case, it will not be necessary to pass upon all the questions which have been argued. We decide the case upon the single point, that the mortgage to the commissioners of loans was not so entered in the commissioners' books as to give it a priority over subsequent incumbrancers. The judgment of the Supreme Court proceeded upon the ground of the invalidity of that mortgage, because Staats, the mortgagor and borrower, was himself one of the commissioners. We agree that it was improper for him, individually, to borrow the public moneys intrusted to him officially to invest; but it is not necessary to decide that the contract is void in such a sense that the proper officers of the state could not elect to adopt and enforce it. However this may be, it is quite certain that this mortgage, in order to have a priority over the one executed to the plaintiffs, must have been entered in the books of the commissioners in such a manner as to afford the notice, contemplated by the act, to subsequent incumbrancers, who acquired liens without actual notice. By the 21st section of the act for loaning the United States deposit fund (*Laws of* 1837, 127), the commissioners are required to procure books with blank forms for mortgages. In receiving mortgages for moneys loaned, they are to begin with the commencement of the book, and, without leaving out or defacing any of the blanks, they are to enter the

several mortgages in a regular series, numbering them in the order in which they are taken, and they are to insert the mortgagor's name, and the number of the mortgage, in an alphabet to be prepared and placed in the book under the letter answering to the mortgagor's surname. (§ 44.) This book of mortgages, and the other books required to be kept by the commissioners, are open to search and examination by any person upon the payment of certain fees, and it is declared "that the execution of the respective mortgages and their entry, on being placed in the books of mortgages of the commissioners, shall have the like lien, priority, operation and effect as if said mortgages had been duly recorded in the book of mortgages in the office of the clerk of the county." (§ 43.) The effect of these enactments is to render a mortgage taken and entered by the commissioners, according to the statute, notice to persons subsequently dealing with the mortgagor respecting the land, in the same manner with mortgages to individuals duly recorded in the office of the clerk of the proper county.

In this case, the mortgage in question was executed on the 5th day of August, 1845, and if it had been entered in its proper place in the book of mortgages, its number would have been one hundred and seven; but it was in fact inserted by filling up a blank among the mortgages of the year 1837, which had been left unused; the mortgage which preceded and the one which followed it being dated in June of that year. It was made to bear the number seventy-two, which would have been the proper number if it had been executed next after the mortgage which preceded it in the book. The name of Staats as mortgagor was inserted in the alphabet at about the place where it would have belonged if it had been executed in 1837. This was done by erasing the name of a mortgagor whose mortgage had been paid.

We are all of opinion that this method of entering the mortgage was not in conformity with the terms or the intention

of the statute, and that such entry did not afford the notice contemplated by the legislature. It was conceded that the subsequent mortgagors had no actual notice. To affect him with the statutory notice, the provisions of the act, so far as they are intended to direct inquirers in their search and examination for incumbrances, must be at least substantially complied with. The inserting this mortgage in a place where it did not belong, and among the mortgages of a prior date by eight years, was calculated to mislead. It may probably be true that if a person proposing to take a subsequent security upon this property had resorted personally to the commissioners' office and had examined their books, he would have been likely to fall upon this mortgage. Still he would not necessarily have done so, and it may very well be that any proposed subsequent incumbrancer would have had satisfactory information as to the state of the title for the whole period antecedent to the time when the mortgage to be guarded against was actually executed. The present case exemplifies this remark, for it appears that in 1837, at the date at which this mortgage was entered, Staats had not yet acquired his title to these premises. If the officers of the Life and Trust Company had possession of Staats' title deeds, or had authentic information of the time when the land was conveyed to him, as may probably have been the case, they would not have had any occasion for making a search among the mortgages of 1837. It frequently happens that persons engaged in lending money upon mortgages employ an agent for making these examinations, setting down in their instructions the period within which the search is to be made. If the business in this case had been conducted in that way, no information as to this loan office mortgage would in all probability have been obtained. It appears from a statement in the plaintiff's mortgage that Staats purchased the premises in 1841. In preparing directions for a search, the plaintiffs would naturally direct that an examination should be made for conveyances and mort-

gages executed by him from that date down to the time the plaintiffs advanced their money and took their mortgage. Such an examination, made with the strictest care and accuracy, would not have disclosed the existence of this loan office mortgage.    The plaintiffs or their agent might lawfully and would naturally assume that the mortgage book and alphabet were kept according to the statute, as in general they undoubtedly were; and they would not be led to look back among the mortgages of a date anterior to the time when the land was conveyed to Staats.

The manner in which these mortgages were required to be entered was substantially the same in which conveyances are directed to be recorded by the county clerk.   They are to be recorded "in the order and as of the time when the same shall be delivered to the clerk for that purpose." (1 *R. S.*, 260, § 24.)   If a county clerk should record a mortgage or deed in a blank space left in a book which had ceased to be used for current records, or in the book in use at a place among records of a date long anterior to the time it was left for record and to its date, it could not be affirmed that it was recorded according to law, or that it furnished the notice to subsequent incumbrancers or purchasers which the statute had provided for.   Although these loan office mortgages are doubtless less numerous than the records in the county clerks' offices, the system upon which they were to be entered was the same, and no sound distinction can be made, based upon the greater or less number of instruments entered.

We have not been referred to any case upon the effect of a record inserted out of its order in the books of official records, but we find that the Supreme Court of Vermont have been called upon to pass upon such a case.   In that state, attachments upon land have a priority over unrecorded conveyances by the debtor.   In a contest between an attaching creditor and one who claimed under a mortgage executed by the debtor, of a date prior to the attach-

ment, it appeared that the debtor was town clerk at the date of the mortgage, and had recorded it upon the back leaf of a former volume of records, in which no mortgages had been recorded for about twelve years. It was held not to be a lawful record, and that the attaching creditor had a priority over the mortgagee. The record was no doubt made in the manner it was, from fraudulent motives on the part of the mortgagor; but the mortgagee was not a party to the fraud. If the record was a lawful one, it should have been allowed its proper effect, notwithstanding the motives with which it was made. (*Sawyer* v. *Adams*, 8 *Vt.*, 172.) The case before us is a stronger one for the application of the principle than the case in Vermont; for the statute of that state did not, in terms, direct the order in which conveyances should be recorded. It was simply made the duty of the clerk "truly to record all deeds and conveyances," &c.

Furthermore, it is a general principle that, where the recording of a conveyance is made constructive notice, the record, to be effectual, must be made according to law. (*Frost* v. *Beekman*, 1 *John. Ch.*, 288; *Lessee of Heister* v. *Fortner*, 2 *Bin.*, 40.)

The judgment of the Supreme Court, though proceeding upon other grounds, is such as would follow from the foregoing views, and it should be affirmed.

All the judges concurring,

Judgment affirmed.