OPINION OF THE COURT
Gabrielli, J.
Plaintiff Andy Associates, Inc., commenced this action to foreclose a second mortgage on premises located at 240 West 103rd Street, New York, New York. Defendant Bankers Trust Co., holder of a junior mortgage interest in the same premises, challenged Andy Associates’ claim of priority on the ground that Andy Associates’ predecessor in interest had failed to record its lien in the office of the county clerk as required by section 291 of the Real Property Law. Under that provision, an unrecorded conveyance[1] of an interest in real property is *17 deemed void as against a subsequent good faith purchaser for value who acquires his interest without actual or constructive notice of the prior conveyance. The sole question presented on this appeal is whether Bankers Trust qualifies as a "good faith” purchaser without notice, so that it is entitled to the protections afforded by section 291. Having examined the recorded state of title as it existed at the time Bankers Trust acquired its mortgage, we conclude that Bankers Trust is chargeable with having had constructive notice of Andy Associates’ prior claim. Accordingly, we hold that Bankers Trust may not invoke section 291 of the Real Property Law to defeat Andy Associates’ right of priority, notwithstanding that such right was derived from an earlier unrecorded conveyance.
To place the case in proper perspective, it is required that the entire seemingly involved background be described as succinctly as possible to facilitate an understanding of the rights of the parties to this action.
The events which gave rise to the present controversy may be traced to July 2, 1951, when the owner of the property located at 240 West 103rd Street, Marseilles Associates, leased the premises to Marseilles Management, a separate corporation, for a term of 21 years. Simultaneous with the execution of the lease, the tenant paid the landlord, Marseilles Associates, a lump sum of $62,500, which represented a security deposit to insure the tenant’s faithful performance of its obligations under the lease. In return, and in order to insure the eventual repayment of this sum, Marseilles Associates gave its tenant, Marseilles Management, a promissory note and a mortgage on the leased premises. This mortgage contained a separate, specific clause which prohibited the tenant from assigning its rights under it, except where the assignment was made in connection with a simultaneous assignment of the lease or, in the alternative, where the assignment was made to the owner of the premises "as security for the faithful performancé by the tenant of the terms, covenants and conditions” set forth in the lease. Presumably, the purpose of the latter assignability provision was to enable the landlord to take back an assignment of its own mortgage as a means of protecting its right to retain the tenant’s security deposit in *18 the event of the tenant’s failure to meet the obligations imposed by the lease.
Pursuant to this clause, Marseilles Management, the tenant, completed the leasing arrangements by executing an assignment, outright on its face, of the mortgage to Marseilles Associates, the landlord and mortgagor. Thus, when the transaction was finally closed, the landlord held both the tenant’s $62,500 cash payment and the mortgage on the leased premises for the limited purpose of securing the tenant’s faithful performance of the terms of the lease. If the tenant fulfilled its obligations, it would immediately become entitled to the return of its security deposit and would, as well, become entitled to exercise its rights as mortgagee, including its right of foreclosure. Only if the tenant defaulted on some aspect of the lease would the landlord gain the unconditional right to retain the $62,500 security deposit and to consider its obligations under the mortgage canceled. All of the documents which comprised the 1951 transaction between Marseilles Associates and Marseilles Management, including the. lease, the mortgage and the assignment of the mortgage, were subsequently recorded in the office of the county clerk as required by section 291 of the Real Property Law.
The next transaction in the sequence of developments leading to the present litigation occurred in 1954, when the tenant, Marseilles Management, assigned its lease along with its conditional rights under the 1951 mortgage to an organization called Marseilles Hotel Corp. Under this assignment, Marseilles Hotel stepped into the shoes of the former tenant and thus became entitled to the return of the $62,500 security deposit as well as to the rights conferred by the mortgage upon full compliance with the terms of the lease. Andy Associates, the plaintiff in this case, ultimately succeeded to the tenant’s rights in the mortgage as a result of a further assignment to it by Marseilles Hotel. Unfortunately, although Marseilles Hotel did record its acquisition of the leasehold interest in the premises, it never recorded its acquisition of Marseilles Management’s interest in the 1951 mortgage in the office of the county clerk. Thus, despite the fact that Andy Associates eventually recorded the assignment made to it by Marseilles Hotel, there remained a "gap” in the recorded "chain of title” leading to Andy Associates’ interest in the mortgage.
Several years after Andy Associates acquired its interest in *19 the 1951 mortgage, changes began to occur in the ownership of the property at 240 West 103rd Street. First, in 1968, Marseilles Associates, the original owner and landlord, transferred the property to another corporation, Broadway-Marseilles Corp. In conjunction with this transfer, Marseilles Associates assigned to Broadway-Marseilles its right to hold the 1951 mortgage as collateral security for the tenant’s faithful performance of the terms of the outstanding lease. In form, this assignment was outright. Broadway-Marseilles’ interests were in turn transferred to a third party, Bonjay East, Inc., in 1972 and 1973 respectively. Finally, in March of 1973, for reasons which remain unclear, Bonjay East recorded an instrument which purported to represent a "satisfaction” of the 1951 mortgage.
Approximately 10 months later, defendant Bankers Trust became embroiled in this complex chain of transactions when it made a loan to Bonjay East in exchange for Bonjay East’s execution of a new mortgage on the premises at 240 West 103rd Street. It appears that Bankers Trust entered into this transaction on the strength of the recorded satisfaction and on the unwarranted assumption that the property was no longer encumbered by the 1951 mortgage.
The various interests that were created by the foregoing series of events clashed for the first time in 1976, when Andy Associates commenced this action to foreclose on the property pursuant to the 1951 mortgage. By that time, the 21-year leasehold interest that had been established in 1951 had run its course, and the tenant or its successor in interest had become entitled to the return of that part of the original $62,500 security deposit that had not yet been repaid. Moreover, with the termination of the tenancy, the landlord’s right to hold the 1951 mortgage as collateral security was extinguished, and all of the rights conferred by the mortgage presumably had reverted to Andy Associates, the tenant’s assignee.[2] Hence, by 1976 Andy Associates had a right to foreclose against the property as a means of recovering the outstanding portion of the security deposit.
Nonetheless, Bankers Trust opposes the attempted foreclosure, contending that its later mortgage should not be held *20 subordinate to Andy Associates’ rights. It is Bankers Trust’s position that, under section 291 of the Real Property Law, Andy Associates’ interest should be deemed void as against Bankers Trust, because Andy Associates’ interest was derived from an unrecorded instrument, the assignment made by Marseilles Management to Marseilles Hotel. Both the trial court and the Appellate Division rejected Bankers Trust’s contention, however, finding that the records filed in the county clerk’s office at the time Bankers Trust acquired its mortgage contained sufficient evidence of Andy Associates’ prior claim to put Bankers Trust on "constructive notice” that the property had been and continued to be encumbered. Thus, the lower courts held, Bankers Trust could not defeat Andy Associates’ right of priority, despite the fact that Andy Associates’ predecessor in interest had failed to record.
In upholding the determinations made below, we proceed from the premise that the recording act, which is embodied in article 9 of the Real Property Law, was enacted to accomplish a twofold purpose. First, it was intended to protect the rights of innocent purchasers who acquire an interest in property without knowledge of prior encumbrances (see Jackson v Post, 15 Wend 588; Hall v Nelson, 23 Barb 88; Fox v Sizeland, 170 Misc 390; see, generally, 6A Powell, Real Property, par 912; 4A Warren’s Weed New York Real Property, Recording, § 1.02). Second, the statute was designed to establish a public record which would furnish potential purchasers with notice, or at least "constructive notice”, of previous conveyances and encumbrances that might affect their interests (see Jackson v Post, 15 Wend 588, supra). Given these statutory purposes, it follows that a purchaser of an interest in land such as Bankers Trust has no cause for complaint under the statute when its interest is upset as a result of a prior claim against the land the existence of which was apparent on the face of the public record at the time it purchased (see, e.g., Doyle v Lazarro, 33 AD2d 142, affd 33 NY2d 981; cf. Pallone v New York Tel. Co., 34 AD2d 1091, affd 30 NY2d 865).
It has been contended, however, that Bankers Trust cannot be charged with having had record notice of Andy Associates’ prior right, notwithstanding the fact that the assignment of the 1951 mortgage to Andy Associates was duly recorded by the time Bankers Trust acquired its lien. This contention is premised upon the so-called "gap” in Andy Associates’ chain *21 of title which resulted from Marseilles Hotel’s failure to record the assignment made to it by Marseilles Management. Relying upon this "gap”, Bankers Trust urges us to apply to this case the well-established rule that a subsequent purchaser is not chargeable with constructive notice of conveyances that are recorded outside his direct chain of title (Doyle v Lazarro, 33 AD2d 142, affd 33 NY2d 981, supra; see Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY 242; Tarbell v West, 86 NY 280; New York Life Ins. Co. v White, 17 NY 469; 4A Warren’s Weed New York Real Property, Recording, § 5.01; 6A Powell, Real Property, par 916). The property rights represented by the 1951 mortgage, it is argued, flowed directly from Marseilles Management to Marseilles Associates, the original landlord, and then proceeded down the chain through Broadway-Marseilles and finally to Bonjay East, which recorded a "satisfaction”. The absence of any record of a conveyance of mortgage rights from Marseilles Management to Marseilles Hotel, it is claimed, deprived Bankers Trust of a means of discovering Andy Associates’ conflicting interest and, in effect, removed that interest from the direct "chain of title”. For this reason, Bankers Trust contends, it may not be held to have had constructive notice of Andy Associates’ claim to the property.
Despite the surface appeal of this argument, we find that the peculiar facts presented in this case compel its rejection here. Initially, it must be noted that the terms of the 1951 mortgage, which was itself duly recorded in the office of the county clerk, plainly indicated that two separate but harmonious chains of interest could be created through successive assignments of the mortgage instrument, thus putting any potential purchaser or title examiner on notice as to the restrictions on possible subsequent assignments. On the one hand, the rights possessed by the tenant Marseilles Management under the mortgage, including the right to foreclose in the event the security deposit was wrongfully withheld, could be passed on to other tenants along with the assignment of the leasehold interest. On the other hand, a more limited interest, the right of the landlord to hold the mortgagé as collateral security for the tenant’s faithful performance of the lease, could be assigned to successive owners of the premises as title to the property changed hands. It goes without saying that these separable interests could and, in fact, necessarily would give rise to two distinct chains of title, both of which *22 should have been "searched” and investigated by Bankers Trust in the course of its title search.
Tracing the various interests in this case back to their origins, we find that Bonjay East, from which Bankers Trust’s present claim is derived, never acquired more than a limited, collateral interest in the 1951 mortgage. When the mortgage was assigned by the original mortgagee, Marseilles Management, to the landlord-mortgagor, Marseilles Associates, it was given only for the limited purpose of securing the landlord against a default by the tenant. Although the assignment was on it face outright, the restrictive clause in the mortgage gave notice that this might not be the case. The collateral character of this interest in the 1951 mortgage did not change as it was passed from Marseilles Associates to Broadway-Marseilles and then from Broadway-Marseilles to Bonjay East. Hence, while Bonjay East had the power to satisfy the landlord’s collateral security interest in the mortgage, it did not have the broader right to discharge the mortgage itself. That right resided solely in the party which acquired its interests through the tenant, in this case Andy Associates. Consequently, the "satisfaction” recorded by Bonjay East could not legally have operated to discharge the mortgage (see Vohmann v Michel, 185 NY 420).
It is true that, in the ordinary case, a purchaser is entitled to rely upon a "satisfaction” of a mortgage recorded by a person who appears to hold the instrument as an assignee (Bacon v Van Schoonhoven, 87 NY 446). There is generally no requirement that the purchaser make further inquiries to ascertain whether the purported assignee actually possessed the authority to discharge the mortgage obligations (Bacon v Van Schoonhoven, supra). Indeed, section 321 (subd 1, par [b]) of the Real Property Law codifies this principle and extends it by providing that "[w]hen it appears from the record that the mortgage has been assigned, whether or not the assignment was made as collateral security, the discharge shall be signed by the person who appears from the record to be the last assignee thereof’. Nothing in the statute or the related case law, however, can be construed to override the even more fundamental rule that a satisfaction entered by one who was without authority to do so cannot serve to insulate a subsequent purchaser from prior claims, when the existence of such claims was apparent from the face of the record (see Larned v Donovan, 84 Hun 533, affd 155 NY 341; see, also, *23 Vohmann v Michel, 185 NY 420, supra). In other words the provisions, and thus the benefits, of section 321 (subd 1, par [b]) are available only if the mortgage assignment appears to be outright and notice is not otherwise given on the record that the assignment may be as collateral security only.[3]
 Here, the recorded mortgage which Bonjay East purported to discharge by its recorded satisfaction indicated by its own terms that Bonjay East was not an assignee with the power to record such a discharge. The power to discharge the mortgage remained extant in another party, and, accordingly, the purported satisfaction recorded by the collateral assignee only was ineffective. Thus, Bankers Trust cannot claim the benefit of either section 321 (subd 1, par [b]) or the recorded satisfaction. On a separate ground, we point out that Bankers Trust cannot escape the imposition of notice of Andy Associates’ outstanding interest in the mortgage and notice that the tenant’s rights in the mortgage had not been merged in the collateral security interest possessed by the landlord-mortgagor by reason of any default by the tenant in the lease.
Initially, we take judicial notice of the fact that the property at issue here is located in New York City, which utilizes the "block and lot” method of indexing recorded conveyances (Administrative Code of City of New York, § 1052-24.0; see Real Property Law, § 328; 4A Warren’s Weed New York Real Property, Recording, § 3.09; Marks, Maloney and Paperno, Mortgages and Mortgage Foreclosure in New York [rev ed], § 362; see, also, County Law, §§ 918-920). This indexing method, unlike the traditional "grantor-grantee” and "mortgagor-mortgagee” system (see Real Property Law, § 316), *24 enables the title searcher readily to find all conveyances within a given time frame which affect a particular parcel of land (see 6A Powell, Real Property, par 916). Under this system, there is no need for the title searcher to resort to the more tedious and cumbersome method of tracing a chain of title through successive grantors and assignors and, consequently, there is little or no danger that a particular outstanding interest will be overlooked because it was recorded outside of the direct "chain of title”. Thus, it appears that where the "block and lot” indexing method is used, there is no logical reason to afford potential purchasers additional protection by applying the time-honored rule that a purchaser is not chargeable with constructive notice of conveyances recorded outside of his direct chain of title. That rule, which was developed in cases where the purchaser had to rely upon the grantor-grantee system of indexing, simply represented a pragmatic judicial response to the exigencies of conducting a title search under such a system (see 6A Powell, Real Property, par 916). Its application in a case such as this, where the "block and lot” indexing system was available would seem, at the very least, a somewhat anachronistic result (see, generally, Cross, Record "Chain of Title” Hypocrisy, 57 Col L Rev 787).
In light of the well-established policy in favor of applying the recording act in such a way as to effect its underlying purpose (see, e.g., Larned v Donovan, 84 Hun 533, affd 155 NY 341, supra), we decline to extend the rule limiting constructive notice to recorded conveyances that are within the purchaser’s direct chain of title to instances in which the purchaser had access to a "block and lot” or tract indexing system. Accordingly, we hold that, in this case, Bankers Trust is chargeable with constructive notice of Andy Associates’ outstanding interest in the mortgage. This recorded fact, coupled with the recorded recitation in the 1951 mortgage regarding the assign-ability of the mortgage, was sufficient to place Bankers Trust on notice that it could not rely on the satisfaction entered by Bonjay East and that any interest it acquired in the property located at 240 West 103rd Street would have to be subordinated to that possessed by Andy Associates. Thus, Andy Associates is entitled to prevail in its foreclosure action.
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.
*25 Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.

. "Conveyance” is defined by subdivision 3 of section 290 of the Real Property Law, *17 in pertinent part, as an instrument by which an interest in real property is created, transferred, mortgaged or assigned, or through which the title to any real property may be affected.

. The tenant’s right to recover its security deposit and mortgage was, of course, dependent upon its faithful performance of the terms of the lease. Since the question whether the tenant actually fulfilled its obligations has not been raised in the present appeal, we will assume for the sake of clarity that all covenants were duly performed.

. In the usual case, the documents that are recorded in conjunction with a mortgage assignment recite only that the rights in the mortgage have been transferred. Such documents do not ordinarily reveal whether the assignment was made unconditionally or, rather, was made for the limited purpose of providing collateral security. Hence, there is often no way of ascertaining from the face of the record whether the assignee of record has the power to execute and record a satisfaction of the mortgage, and the subsequent purchaser who relies on a satisfaction entered by an assignee would always be taking a risk. It is this uncertainty that section 321 (subd 1, par [b]) of the Real Property Law was designed to eliminate. The effect of the statute is to enable innocent purchasers to rely upon a satisfaction entered by the assignee of record without having to inquire whether the assignee’s authority to discharge the mortgage was limited by some private agreement. In contrast, where the record itself indicates that the assignee purporting to discharge the mortgage held the instrument only as collateral security, the purchaser is on notice that the recorded satisfaction is suspect. Under such circumstances, the purchaser cannot be permitted to rely on the recorded satisfaction under section 321 (subd 1, par [b]).