OPINION OF THE COURT
Anthony J. Paris, J.
Plaintiffs commenced this foreclosure action on or about February 15, 2007 by the filing of a notice of pendency and summons and complaint. On or about March 26, 2007, plaintiffs filed an amended summons and amended complaint. On November 27, 2007, this court executed a judgment of foreclosure and sale on behalf of the plaintiffs relative to the premises located at 3610 West Seneca Turnpike, Syracuse, New York. Thereafter, by order to show cause dated January 24, 2008, and filed on behalf of defendant U.S. Bank National Association (hereinafter US Bank),* the judgment of foreclosure and sale was stayed. Said judgment was ultimately vacated by order of this court dated June 5, 2008 and defendant US Bank was allowed to submit an answer to the plaintiffs’ amended complaint. That answer, dated July 25, 2008, contained two counterclaims. The first sought priority for the US Bank mortgage based on the plaintiffs’ notice of that mortgage, and the second sought *992 priority for the US Bank mortgage based on the doctrine of equitable subrogation.
US Bank, as assignee of the Mortgage Lenders mortgage, has brought on this motion pursuant to CPLR 3212 seeking summary judgment dismissing plaintiffs’ amended complaint on the basis of its counterclaims, and a declaration that the Mortgage Lenders/US Bank mortgage is superior to and has priority over that of the plaintiffs. Plaintiffs, Larry Gerow and Shirley Montana, oppose defendant’s motion for summary judgment and cross-move seeking partial summary judgment dismissing defendant’s first counterclaim with respect to the issue of actual or constructive notice.
Facts
Defendants Paul J. Sinay and Linda D. Sinay executed a mortgage in favor of Mortgage Lenders Network USA dated October 31, 2003, and recorded with the Onondaga County Clerk’s Office on November 13, 2003 in liber 13731 of mortgages at page 0187. This instrument granted Mortgage Lenders a mortgage interest on real property owned by defendants Sinay located at 3610 West Seneca Turnpike, Syracuse, New York. The mortgage was given as security for the repayment of a promissory note dated October 31, 2003 in the principal amount of $168,750.
Defendants Sinay executed a mortgage in favor of the plaintiffs Larry Gerow and Shirley Montana dated November 5, 2003, and recorded with the Onondaga County Clerk’s Office on November 12, 2003 in liber 13729 of mortgages at page 83. This mortgage was given as security for the repayment of a promissory note dated November 5, 2003, in the principal amount of $149,919.58.
There is no dispute that plaintiffs Gerow and Montana secured their mortgage lien on the property after that of defendant’s assignor, Mortgage Lenders, but that plaintiffs recorded their mortgage first. Defendant US Bank seeks judgment declaring that its mortgage has first priority as a matter of law because plaintiffs were not bona fide subsequent good faith lenders without notice, and therefore are not entitled to the protections of Real Property Law § 291. US Bank further seeks relief under the doctrine of equitable subrogation.
Summary Judgment Standard
In a motion for summary judgment, the moving party must come forward with evidence in admissible form to establish the *993 absence of any material factual issues. Once the moving party has made a prima facie showing of entitlement to summary judgment, the burden of proof shifts to the nonmoving party to likewise come forth with evidence in admissible form to establish the existence of a triable issue of fact. The court, in such a motion, must view all of the evidence so presented in the light most favorable to the nonmoving party. (Zuckerman v City of New York, 49 NY2d 557 [1980].)
Analysis
Prior Notice
Real Property Law § 291 provides as follows:
“A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, . . . may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange or contracts to purchase or acquire by exchange, the same real property or any portion thereof, or acquires by assignment the rent to accrue therefrom as provided in section two hundred ninety-four-a of the real property law, in good faith and for a valuable consideration, from the same vendor or assignment, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof . . . , if such contract is made in good faith and is first duly recorded.”
The Court of Appeals has held that
“the recording act, which is embodied in article 9 of the Real Property Law, was enacted to accomplish a twofold purpose. First, it was intended to protect the rights of innocent purchasers who acquire an interest in property without knowledge of prior encumbrances. Second, the statute was designed to establish a public record which would furnish potential purchasers with notice, or at least ‘constructive notice’, of previous conveyances and encumbrances that might affect their interests.” *994 (Andy Assoc. v Bankers Trust Co., 49 NY2d 13, 20 [1979] [citations omitted].)
Under New York’s recording statute, a good faith mortgagee is entitled to priority over prior unrecorded liens. To be a good faith mortgagee, one must not have actual, constructive or inquiry notice of a prior lien. (Washington Mut. Bank, FA v Peak Health Club, Inc., 48 AD3d 793, 797 [2d Dept 2008].)
The issue in this case is whether plaintiffs qualify as good faith mortgagees without notice and are therefore entitled to priority over defendant’s lien pursuant to Real Property Law §291.
“ ‘Where there are conflicting claims between a prior unrecorded [interest in real property] and a subsequent purchaser, if the [subsequent] purchaser “has knowledge of any fact, sufficient to put him [or her] on inquiry as to the existence of some right or title in conflict with that he [or she] is about to purchase, he [or she] is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his [or her] claim, to be considered as a bona fide purchaser.” ’ ” (Bauer v CS-Graces, LLC, 48 AD3d 922, 924 [3d Dept 2008], lv denied 10 NY3d 712 [2008], quoting Miles v De Sapio, 96 AD2d 970, 970 [1983], quoting Williamson v Brown, 15 NY 354, 362 [1857].)
“This presumption, however, is a mere inference of fact, and may be repelled by proof that the purchaser failed to discover the prior right, notwithstanding the exercise of proper diligence on his [or her] part.” (Williamson at 362.)
It would be plaintiffs’ burden at trial as subsequent good faith mortgagees to prove that they did not obtain their mortgage with previous notice of the defendant’s mortgage. (Neuhauser v Polanco, 14 AD3d 674 [2d Dept 2005].) On this motion for summary judgment, however, it is defendant’s prima facie burden to establish that plaintiffs had knowledge of facts and circumstances that would have put them on “inquiry notice” in order to be entitled to summary judgment as a matter of law. (Washington Mut. Bank, FA v Peak Health Club, Inc., 48 AD3d 793, 798 [2008].)
While plaintiffs had no actual notice by way of any properly recorded mortgage at the time they filed their mortgage on November 12, 2003, “[a] party will be deemed to have inquiry notice when it had ‘ “knowledge of facts that would lead a rea *995 sonably prudent purchaser to make inquiry.” ’ ” (Ward v Ward, 52 AD3d 919, 920-921 [3d Dept 2008], quoting Morrocoy Mar. v Altengarten, 120 AD2d 500, 500 [1986], quoting 1 Warren’s Weed, New York Real Property § 1.05, at 357; see also Covey v Niagara, Lockport & Ontario Power Co., 286 App Div 341 [4th Dept 1955].)
Defendant US Bank contends that plaintiffs had notice of the Mortgage Lenders mortgage and therefore are not good faith lenders. In support of this position, defendant submits the stock purchase agreement which was prepared by plaintiffs’ attorney, reviewed and approved by both plaintiffs, and signed by plaintiff Shirley Montana. The stock purchase agreement in section 1.2 refers to the note which defendants Sinay were to execute to the plaintiffs and which was to be “collateralized as and for a second mortgage on the buyers residence located at 3610 West Seneca Turnpike, Syracuse, New York 13215” (emphasis added).
The agreement further provides in section 1.2 that “[t]he mortgage is to be recorded in the Office of the Clerk in the County of Onondaga and the mortgage tax and recording expenses on the second collateral mortgage are to be paid by the Buyers” (emphasis added). Defendant also offers sworn deposition testimony by Paul and Linda Sinay attesting that plaintiffs Larry Gerow and Shirley Montana were aware of the fact that the Sinays were refinancing their two existing mortgages on the premises at 3610 West Seneca Turnpike so that the single refinancing mortgagee would have a first mortgage, and that the plaintiffs’ collateral mortgage would be a second mortgage on the property.
Plaintiffs Gerow and Montana offer sworn deposition testimony wherein they deny any such knowledge. Specifically, when asked whether he knew where the funds came from to pay the $30,000 down payment on the stock purchase agreement, Larry Gerow testified that he had “no idea.” Mr. Gerow further testified that he had no conversations with anyone about whether the $30,000 was a result of the Sinays’ refinance of their property. Shirley Montana testified that she did not know that the Sinays were refinancing their existing home mortgage loan in order to obtain the money for the down payment paid to plaintiffs at the closing. Notably, Ms. Montana testified that she believed that a second mortgage would provide her with adequate security.
Plaintiffs claim they had no actual or constructive notice as the Mortgage Lenders mortgage was not on record at the time *996 the Gerow mortgage was recorded, and because they did not know that the Sinays planned to refinance their existing mortgages.
Based solely on the plain language of the stock purchase agreement that the plaintiffs would receive a “second mortgage,” defendant has met its prima facie burden of establishing that plaintiffs had actual or constructive notice of the Mortgage Lenders mortgage and were therefore obligated to make some inquiry. Plaintiffs’ mere denial of knowledge of the Mortgage Lenders mortgage is not sufficient to rebut the clear language of the stock purchase agreement.
Moreover, the evidence shows that plaintiffs’ attorney, Robert Cox, was aware of the Sinays’ intention to refinance their existing mortgages and to fund part of the $30,000 due at closing by refinancing the existing mortgages. While Attorney Cox did not have specific notice that the refinancing actually took place or the identity of the refinancing company, Attorney Cox’s knowledge is imputed to his principals, and they are bound by that knowledge. (Bauer v CS-Graces, LLC, 48 AD3d 922, 924 [2008], citing Skiff-Murray v Murray, 17 AD3d 807 [3d Dept 2005].) This knowledge was also sufficient to place plaintiffs on inquiry notice.
As mentioned hereinabove, section 1.2 of the stock purchase agreement executed by Montana and the Sinays provides that “[t]his Note to be collateralized as and for a second mortgage on the buyers residence located at 3610 West Seneca Turnpike, Syracuse, New York 13215.” The plaintiffs argue that this language expresses only an expectation of a prior recorded mortgage taking priority and does not actually state that Mortgage Lenders would hold a first mortgage on the premises. Whether or not the agreement contained the name of the entity which would hold the first mortgage and whether or not plaintiffs knew who held the superior mortgage, the language of the agreement entitling plaintiffs only to a second mortgage on the premises is sufficient to put reasonable people on inquiry notice such that when they recorded their mortgage and found no previously filed mortgage, they should have made inquiry.
The language of the agreement expressed an expectation of a prior recorded mortgage taking priority. Based on this record, it is evident that plaintiffs concede that they made no inquiry, and, in fact, “didn’t care” who the refinancing entity was, and made no inquiry when there was no prior recorded mortgage. The lack of an expected prior recorded mortgage should have *997 put plaintiffs on inquiry notice, and the plaintiffs possessed sufficient knowledge of facts and circumstances that would lead a reasonably prudent mortgagee to make inquiries. A failure to make such inquiry is fatal and removes plaintiffs from any priority status. (Bauer v CS-Graces, LLC, supra.)
It is of no moment that plaintiffs claim not to have understood the legal implications of the term “second mortgage.” Plaintiff Montana signed the stock purchase agreement while represented by counsel. In fact it was plaintiffs’ counsel who drew up the stock purchase agreement and who specifically included the “second mortgage” language in the document. There is absolutely no showing of unconscionability in the formation of this contract. (See Morris v Snappy Car Rental, 84 NY2d 21 [1994].)
Despite plaintiffs’ contentions, defendant’s failure to raise the issue of priority of mortgages previously (during the foreclosure proceeding or bankruptcy proceeding) is not fatal to its counterclaims seeking first priority status for its mortgage. While Mortgage Lenders was aware of plaintiffs’ intent to foreclose as first mortgagees as early as March 30, 2007 (when served with the amended summons and complaint in plaintiffs’ action to foreclose their mortgage), and defendant did not raise the issue of priority of its mortgage until service of its answer with counterclaims on July 25, 2008, the court finds no authority for the argument that defendant mortgagee has somehow waived its right to raise and prove its mortgage priority.
Therefore, based on this record, the Mortgage Lenders mortgage as assigned to US Bank, while recorded after the Gerow mortgage, nonetheless enjoys priority status of these two conflicting instruments pursuant to Real Property Law § 291.
Equitable Subrogation
The doctrine of equitable subrogation applies
“where the funds of a mortgagee are used to satisfy the lien of an existing, known incumbrance when, unbeknown to the mortgagee, another lien on the property exists which is senior to his but junior to the one satisfied with his funds. In order to avoid the unjust enrichment of the intervening, unknown lienor, the mortgagee is entitled to be subrogated to the rights of the senior incumbrance.” (King v Pelkofski, 20 NY2d 326, 333-334 [1967]; see also Wagner v Maenza, 223 AD2d 640 [2d Dept 1996]; *998 Zeidel v Dunne, 215 AD2d 472 [2d Dept 1995].)
Defendant US Bank urges the court to find that equitable subrogation applies here and determine that its mortgage is superior to that of plaintiffs based on the fact that the funds of its predecessor, Mortgage Lenders, were used to pay off the preexisting mortgages against the premises held by Bank of America and M & T Bank, with no portion of the funds being provided by the plaintiffs. To permit the plaintiffs’ mortgage to have priority over Mortgage Lenders mortgage, argues the defendant, would result in the type of unjust enrichment to the plaintiffs that the equitable subrogation doctrine was designed to prohibit.
The facts in the case of Zeidel {supra) are similar to the case at bar inasmuch as the movant bank there had loaned the mortgagors funds which were used to satisfy four existing mortgages and the bank’s mortgage was to be in first position. Unbeknownst to the bank in Zeidel, the mortgagors also executed another mortgage which was recorded before the bank recorded its mortgage. The appellate court found that the bank should be subrogated to the rights of the prior mortgagees to the extent its funds were used to discharge those obligations. {Zeidel, supra.) In the instant case US Bank claims that it, like the bank in Zeidel, had no knowledge of the transaction involving the Gerow mortgage.
As the movant on the equitable subrogation claim, US Bank must establish all elements of the doctrine, including a lack of knowledge concerning another lien on the property. If Mortgage Lenders knew about the Gerow mortgage and failed to protect itself, it cannot seek the benefits of equitable subrogation. It is the same burden that US Bank seeks to impose upon plaintiffs to establish that they were bona fide purchasers — only here US Bank must establish prima facie that Mortgage Lenders lacked any knowledge of the Gerow lien.
As such, and as plaintiffs point out in their opposition, US Bank has failed to establish as a matter of law that it was not aware of the transaction involving the Gerow mortgage or that it was not on notice of plaintiffs’ intention to secure a mortgage lien against the property. While the Sinays’ mortgage application is some evidence of a lack of knowledge, it is not conclusive and does not establish as a matter of law that Mortgage Lenders had no notice or that Mortgage Lenders could not have taken steps to protect itself. This is not a matter of Mortgage Lenders’ ability to see into the future, as argued by defendant, but rather *999 a failure by defendant to establish its position by evidentiary proof in admissible form sufficient to warrant judgment as a matter of law. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].)
As a mortgagee by assignment, US Bank has no basis from which to allege that it lacked that knowledge, and US Bank has not submitted evidentiary material from a person with knowledge from Mortgage Lenders in that regard. The affidavit of Elizabeth Mathis of Wells Fargo Home Mortgage, servicer for US Bank, stating that the Sinays’ loan application does not provide notice about the Gerow mortgage, is insufficient to show that Mortgage Lenders was otherwise unaware or took reasonable steps to determine whether there was a possibility of another mortgage or lien against the property.
Thus, US Bank has not met its prima facie burden of showing whether Mortgage Lenders knew or had reason to know about the Gerow mortgage or should have inquired about the purpose of the Mortgage Lenders loan. Due diligence on the part of Mortgage Lenders could have revealed the existence of the plaintiffs’ mortgage executed on November 5, 2003, but not recorded until November 12, 2003.
Therefore, based on this record, the doctrine of equitable subrogation is not applicable in this particular case.
Plaintiffs’ Cross Motion
As to plaintiffs’ cross motion for partial summary judgment dismissing defendant’s first counterclaim under Real Property Law § 291, that motion is moot based on the court’s determination that defendant US Bank is entitled to priority pursuant to Real Property Law § 291.
Conclusion
Therefore, by reason of the foregoing and based on the entire record, it is hereby ordered, that the branch of the motion of US Bank, successor by assignment to Mortgage Lenders Network USA, for summary judgment on its counterclaim pursuant to Real Property Law § 291 is granted, and plaintiffs’ amended complaint is dismissed in its entirety; and it is further ordered, that the branch of the motion by US Bank for summary judgment on its counterclaim based on the doctrine of equitable subrogation is denied based on a failure to establish its prima facie burden; and it is further ordered, that plaintiffs’ cross motion seeking summary judgment dismissing that portion of defendant’s first counterclaim seeking judgment under *1000 Real Property Law § 291 on the grounds of actual or constructive notice is denied as moot; and it is further ordered, that the mortgage of US Bank has priority over and is superior to plaintiffs’ mortgage.

 The Mortgage Lenders mortgage was assigned by Mortgage Lenders Network USA Inc. to U.S. Bank National Association pursuant to an assignment of mortgage dated November 30, 2007 which was recorded with the Onondaga County Clerk’s Office on December 18, 2007 at liber 15403 of mortgages at page 629.